UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLEAN AIR CAROLINA, NATURAL RESOURCES DEFENSE COUNCIL, INC., and U.S. PUBLIC INTEREST RESEARCH GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF TRANSPORTATION, ELAINE L. CHAO, in her official capacity as Secretary of Transportation, FEDERAL HIGHWAY ADMINISTRATION, and BRANDYE HENDRICKSON, in her official capacity as Deputy Administrator of the Federal Highway Administration, <br><br> Defendants. | 1:17-cv-5779 <br> ECF Case |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introduction**

1. Plaintiffs challenge the Federal Highway Administration's (FHWA's) unlawful suspensions of a final greenhouse gas (GHG) regulation that would require states to measure and set reduction targets for GHGs emitted by on-road vehicles on the national highway system (the GHG measure).

2. The GHG measure was promulgated under the Moving Ahead for Progress in the 21st Century Act (MAP-21) and Fixing America's Surface Transportation Act (FAST Act). Those Acts require the FHWA to adopt a performance management approach to transportation planning and, specifically, to set performance measures in furtherance of seven national transportation goals, including environmental sustainability.

3. Performance management is the practice of using objective metrics, or performance measures, to inform policy and investment decisions and achieve desired outcomes. In the transportation context, performance management ensures that transportation initiatives, such as proposals to expand public transit or widen existing highways, are funded according to their ability to meet specific goals. By requiring states to track and set targets for GHG emissions on national highways, the GHG measure will push states to fund transportation strategies that achieve the desired outcome: reduction of GHG emissions from the transportation sector.

4. On January 18, 2017, the FHWA issued a final rule adopting the GHG measure. The final rule also set performance measures relating to the reliability of the national highway system, freight movement on the interstate system, and congestion.

5. The final rule was scheduled to go into effect on February 17, 2017.

6. On February 13, 2017, the FHWA postponed the rule's effective date to March 21, 2017. On March 21, the FHWA again postponed the rule's effective date, this time to May 20, 2017. On May 19, 2017, the FHWA suspended the GHG measure altogether, allowing all other aspects of the rule to take effect the following day.

7. The FHWA took these actions without public notice or any opportunity for the public to comment.

8. Under the Administrative Procedure Act (APA), an agency must provide public notice and allow public comment prior to formulating, amending, or repealing a rule. Suspension of a rule's effective date is tantamount to amendment or repeal of the rule. Such suspensions must therefore be preceded by notice and comment.

9. Here, the FHWA's failure to provide notice and comment before suspending the GHG measure violated the APA. Accordingly, the suspensions are invalid.

## Jurisdiction and Venue

10. The FHWA's decisions to suspend the GHG measure are final agency actions subject to judicial review. *See* 5 U.S.C. § 704. This Court has jurisdiction over Plaintiffs' claims pursuant to the federal question statute, 28 U.S.C. § 1331, and the APA, 5 U.S.C. §§ 701-06.

11. The Court has authority to issue the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1361 and 2201-02. This relief would redress the harm to Plaintiffs' members caused by the FHWA's unlawful decisions to suspend the GHG measure.

12. Venue is proper in the Southern District of New York because plaintiff Natural Resources Defense Council, Inc. (NRDC) resides and maintains its principal place of business in this judicial district. *Id.* § 1391(c)(2), (e)(1)(C).

## Parties

13. Plaintiff Clean Air Carolina is a not-for-profit environmental organization founded in 2003. Clean Air Carolina has members in both North and South Carolina. Its mission is to ensure cleaner air quality for all and combat climate change by educating the community about how air quality and climate change affect health, by advocating for stronger clean air and climate policies, and by partnering with other organizations committed to cleaner air, sustainable practices, and GHG reductions. Clean Air Carolina aims to improve air quality and reduce GHG emissions by reshaping the standard practice of relying almost exclusively on highways for transportation needs and supports a multi-

modal system, including more passenger rail, bike and pedestrian options, and consequent development patterns that will lead to less single-occupant auto travel.

14. Plaintiff NRDC is a national, not-for-profit environmental and public health organization with more than 300,000 members nationwide. On behalf of its members, NRDC engages in research, advocacy, public education, and litigation to protect public health and the environment. Since its founding in 1970, NRDC has worked to reduce air pollution and improve air quality throughout the United States. NRDC's core priorities include fighting climate change, in part by advocating for laws and policies that would reduce GHG emissions from the transportation sector.

15. Plaintiff U.S. Public Interest Research Group, Inc. (U.S. PIRG) is a national, nonprofit organization that advocates for the public interest and has tens of thousands of members nationwide. For decades, U.S. PIRG has taken a fact-driven, non-partisan, results-oriented approach to win concrete results on real problems that affect millions of lives. Through its "21st Century Transportation" program, U.S. PIRG is working to create a better and more efficient transportation system less dependent on outdated, carbon-emitting technology that is harmful to our health and the environment.

16. Defendant U.S. Department of Transportation is a federal agency. The Department, through its sub-agency the FHWA, is responsible for implementing MAP-21 and the FAST Act.

17. Defendant Elaine L. Chao, Secretary of Transportation, is the Department of Transportation's highest-ranking official. She is charged with the supervision and management of all decisions and actions of the agency. Plaintiffs sue Secretary Chao in her official capacity.

18. Defendant FHWA is a sub-agency of the U.S. Department of Transportation. It is responsible for implementing MAP-21 and the FAST Act.

19. Defendant Brandye Hendrickson, Deputy Administrator of the FHWA, is that agency's highest-ranking official. She is charged with the supervision and management of all decisions and actions of the FHWA. Plaintiffs sue Deputy Administrator Hendrickson in her official capacity.

**Statutory and Regulatory Framework**

<u>MAP-21 and the FAST Act</u>

20. MAP-21, enacted in 2012, aims to transform the surface transportation system by adopting a performance management approach to transportation planning and programming. *See* Pub. L. No. 112-141 (codified in relevant part at 23 U.S.C. §§ 119, 134-35, 148-50). Such an approach promotes the "most efficient investment of Federal transportation funds by refocusing on national transportation goals, increasing the accountability and transparency of the Federal-aid highway program, and improving project decisionmaking." 23 U.S.C. § 150(a).

21. The FAST Act, enacted in 2015, reaffirms MAP-21's performance management approach. *See* Pub. L. No. 114-94 (codified in relevant part at 23 U.S.C. §§ 119, 148, 150, 167).

22. Together, MAP-21 and the FAST Act set seven national transportation goals: safety, infrastructure condition, congestion reduction, system reliability, freight movement and economic vitality, environmental sustainability, and reduced project delivery delays. *See* 23 U.S.C. § 150(b).

23. The Acts direct the Secretary of Transportation to establish performance measures and standards in furtherance of the national transportation goals no later than eighteen months from MAP-21's date of enactment, that is, by January 6, 2014. *See id.* § 150(a)-(c); Pub. L. No. 112-141 (enacted July 6, 2012).

24. No later than one year after the performance measures are set, states must adopt corresponding performance targets. 23 U.S.C. § 150(d). States must periodically submit reports to the Secretary describing their progress in achieving those targets. *Id.* § 150(e)(3).

The APA

25. Under the APA, an agency must generally publish a notice of proposed rulemaking in the Federal Register and solicit public comment on all agency rulemakings. 5 U.S.C. § 553. This requirement applies not just to promulgation but also to the amendment or repeal of a rule. *See id.* § 551(5).

26. The APA's notice-and-comment requirement is excused "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons thereof in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." *Id.* § 553(b)(B).

27. The APA also requires that a rule be published in the Federal Register not less than thirty days before its effective date. *Id.* § 553(d). This requirement too can be waived "for good cause found and published with the rule." *Id.* § 553(d)(3).

28. The APA makes judicial review available to "person[s] suffering legal wrong because of agency action." *Id.* § 702. Upon review, a court "shall . . . compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency

action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion" or "without observance of procedure required by law." *Id.* § 706(1), (2)(A), (2)(D).

## Background

The FHWA Implements MAP-21 and the FAST Act

29. In 2014, the FHWA initiated a series of three rulemakings to establish the performance measures required by MAP-21 and the FAST Act.

30. On March 15, 2016, the FHWA issued a final rule setting performance measures related to safety. On January 18, 2017, the FHWA issued a second final rule setting performance measures related to infrastructure.

31. Also on January 18, the FHWA issued a third final rule establishing the GHG measure at issue here, as well as other performance measures relating to reliability of the national highway system, freight movement on the interstate system, and congestion.

32. Before adopting the third final rule, the FHWA sought comments on whether and how to establish a GHG performance measure. Nine state departments of transportation (state DOTs), 24 metropolitan planning organizations (MPOs), over 100 cities, 67 members of Congress, more than 100 public interest organizations—including plaintiffs NRDC and U.S. PIRG—and almost 100,000 individuals commented in favor of such a measure.

The U.S. Transportation Sector Significantly Contributes to Climate Change

33. GHGs—primarily carbon dioxide—trap heat in the earth's atmosphere, causing temperatures to rise and the earth's climate to change. Human-produced GHGs, such as those associated with fossil fuel combustion, accelerate and exacerbate climate

change. Climate change, in turn, has broad and harmful effects on the environment, including hotter temperatures, rising sea levels, more extreme weather events, and increased flooding, all of which severely affect human health. These effects are already occurring, and are expected to worsen over time unless GHG emissions are substantially reduced.

34. The U.S. transportation sector is the largest source of GHG emissions in the United States. It accounts for at least twenty-five percent of total U.S. GHG emissions, and over five percent of global GHG emissions. Over eighty-three percent of GHG emissions from the transportation sector are attributable to on-road vehicles. GHG emissions from these vehicles thus meaningfully contribute to national GHG levels and, consequently, to climate change.

35. On-road vehicles are also responsible for thirty-eight percent of U.S. emissions of nitrogen oxides and fourteen percent of U.S. emissions of volatile organic compounds, which in turn contribute to the formation of ground-level ozone and particulate matter. These pollutants have immediate and harmful effects on local air quality, and climate change compounds those effects. These pollutants also harm public health: exposure to such pollutants is associated with higher rates of respiratory disease, preterm birth, childhood cancer, and premature death. People who live or work near major highways, and especially children, elderly adults, and individuals with preexisting health conditions, are particularly vulnerable to such harms.

The FHWA Adopts the GHG Measure

36. Recognizing that the transportation sector "recently surpassed . . . [the] electricity generation [sector]" as the "largest source of GHG emissions" in the United States, and that "[s]ignificantly greater reductions in transportation GHG emissions are

needed" to address climate change and promote environmental sustainability, the FHWA adopted a GHG performance measure. 82 Fed. Reg. 5970, 5997 (Jan. 18, 2017); *see also id.* at 5993.

37. The GHG measure applies nationwide and requires state DOTs and MPOs to track annual tons of carbon dioxide emitted from all on-road mobile sources on the national highway system. The measure is calculated using annual fuel sales, emission conversion factors supplied by the FHWA, and vehicle miles traveled on national highways within each state, and will be expressed as the percent change in carbon dioxide emissions from 2017.

38. State DOTs and MPOs must also set two- and/or four-year GHG emissions-reduction targets. Initial targets must be submitted to the FHWA by February 20, 2018.

39. State DOTs and MPOs are required to submit performance reports to the FHWA every two years. Baseline reports are due by October 1, 2018, and must include, among other things, carbon dioxide emissions totals for the years 2015-2017.

40. The FHWA will biennially assess whether state DOTs have made significant progress towards achieving their GHG performance targets. If the FHWA determines that a state DOT has failed to make significant progress towards achieving its target, the state DOT must, in its next performance report, document the actions it will take to achieve the target.

The FHWA Subsequently Suspends the GHG Measure

41. The GHG measure, along with the other performance measures established by the FHWA in its third rule implementing MAP-21 and the FAST Act, was due to take effect on February 17, 2017.

42. On January 20, 2017, President Trump was inaugurated. That same day, former White House Chief of Staff Reince Priebus issued a memorandum (Priebus Memorandum) entitled "Regulatory Freeze Pending Review," which directed agencies to delay for sixty days the effective dates of rules that had been published in the Federal Register but had not yet taken effect. The Memorandum instructed that, if an agency determined that further delay was warranted, the agency "should consider proposing for notice and comment a rule to delay the effective date for regulations beyond that 60-day period." 82 Fed. Reg. 8346, 8346 (Jan. 24, 2017). The Memorandum excused regulations subject to statutory deadlines from its requirements.

43. On February 13, in response to the Priebus Memorandum and without notice or opportunity for public comment, the FHWA suspended the third final rule's effective date for thirty days, until March 21.

44. On March 21, again without notice or opportunity for public comment, the FHWA suspended the third final rule's effective date an additional sixty days, until May 20.

45. On May 19—the day before the third final rule was to go into effect—the FHWA indefinitely suspended the effective date of the GHG measure. The agency did so without notice or opportunity for public comment. The remaining portions of the rule went into effect on May 20.

46. Invoking the APA's good cause exceptions, 5 U.S.C. § 553(b)(B), (d)(3), the agency asserted that notice and comment on the suspensions was not required. Specifically, the agency stated that good cause existed to excuse the lack of notice and comment because the "President's appointees and designees" needed "adequate time to review" the GHG

10

measure. 82 Fed. Reg. 10,441, 10,441-42 (Feb. 13, 2017); 82 Fed. Reg. 14,438, 14,438 (Mar. 21, 2017); 82 Fed. Reg. 22,879, 22,880 (May 19, 2017).

47. When it indefinitely suspended the GHG measure on May 19, the agency also stated that, "[g]iven the imminence of the effective date" of the rule, "seeking prior public comment [on the suspension] would be impractical, as well as contrary to the public interest in the orderly promulgation and implementation of regulations." 82 Fed. Reg. at 22,879-80. The agency indicated that it would be publishing a notice of proposed rulemaking on the GHG measure "in the coming weeks," *id.* at 22,879, and that the public would have an opportunity to comment on the measure "in the near future," *id.* at 22,880.

Suspension of the GHG Measure Harms Plaintiffs' Members

48. Plaintiffs bring this action on behalf of their members. These members include individuals and families who are adversely affected by climate change and who will continue to be harmed by climate change in the future. For example, Plaintiffs have members who have suffered from increased flooding, rising sea levels, more intense rainfalls, warmer temperatures, and poorer air quality—all impacts associated with climate change—and who are reasonably concerned that these harms will increase unless steps are taken to curb GHG emissions. Plaintiffs also have members who live near national highways, who are exposed to harmful air pollutants such as ground-level ozone and particulate matter, and who have developed respiratory conditions or whose respiratory conditions have worsened.

49. The FHWA's unlawful suspensions of the GHG measure harm Plaintiffs' members by delaying much-needed reductions of GHG emissions from the U.S. transportation sector that would help slow or prevent climate change. The suspensions also

delay associated reductions of ground-level ozone, particulate matter, and other harmful air pollutants.

50. Plaintiffs' members' injuries would be redressed by an order vacating the FHWA's decisions to suspend the GHG measure. If the GHG measure were presently in effect, state DOTs and MPOs would need to start measuring GHG emissions from the national highway system and formulating GHG reduction targets to meet statutory and regulatory deadlines, the earliest of which is February 20, 2018. These targets, in turn, would lead state DOTs and MPOs to develop transportation policies and make investment decisions that would reduce GHG emissions. As the FHWA itself recognized, such policies are "essential to minimize the impacts from climate change." 82 Fed. Reg. at 5996-97 (citing public comments FHWA "agrees with"). Those policies would also reduce other harmful air pollutants, like ground-level ozone and particulate matter, generated by the transportation sector.

51. The FHWA's failure to comply with the APA's notice-and-comment requirements before suspending the GHG measure three times further harmed Plaintiffs' members by depriving them of their procedural right to comment on the suspensions before they took effect. Had such opportunities been given, Plaintiffs' members, or Plaintiffs acting on their members' behalf, would have opposed the suspensions.

## Claim for Relief

52. Plaintiffs incorporate by reference all preceding paragraphs.

53. The FHWA adopted the GHG measure as part of a duly promulgated final rule that was published in the Federal Register on January 18, 2017, and set to become effective on February 17, 2017.

54. The FHWA suspended the GHG measure three times without publishing a notice of proposed rulemaking or providing an opportunity for public comment, in violation of 5 U.S.C. § 553.

55. The FHWA's decisions to suspend the GHG measure were "arbitrary, capricious, [and] an abuse of discretion," and made "without observance of procedure required by law." *Id.* § 706(2)(A), (2)(D).

56. The FHWA lacked good cause to disregard the notice-and-comment requirements of the APA each time it suspended the GHG measure. *See id.* § 553(b)(B), (d)(3).

## Request for Relief

Plaintiffs respectfully request that this Court enter judgment:

A. Declaring that the FHWA's decisions to suspend the GHG measure without notice and comment violated the APA;

B. Vacating the FHWA's suspensions of the GHG measure;

C. Awarding plaintiffs Clean Air Carolina and U.S. PIRG their costs and reasonable attorneys' fees; and

D. Granting such other relief that the Court deems just and proper.

Dated: July 31, 2017

Respectfully submitted,

/s/ Mitchell S. Bernard
Mitchell S. Bernard (MB 5823)
Natural Resources Defense Council
40 West 20th Street, 11th Floor
New York, NY 10011
212-727-4469
mbernard@nrdc.org

/s/ Cecilia D. Segal
Cecilia D. Segal (*pro hac vice* applicant)
(California Bar No. 310935)
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94110
415-875-6112
csegal@nrdc.org

*Counsel for Natural Resources Defense Council and U.S. Public Interest Research Group*

/s/ Kimberley Hunter
Kimberley Hunter (*pro hac vice* applicant)
(North Carolina Bar No. 41333)
Southern Environmental Law Center
601 West Rosemary Street, Suite 220
Chapel Hill, NC 27516
919-967-1450
khunter@selcnc.org

*Counsel for Clean Air Carolina*