UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CLEAN AIR CAROLINA, NATURAL RESOURCES      :
DEFENSE COUNCIL, INC., and U.S. PUBLIC     :
INTEREST RESEARCH GROUP, INC.,             :
                                           :
                    Plaintiffs,            :
                                           :
        -against-                          :
                                           :   17 Civ. 5779 (AT)
UNITED STATES DEPARTMENT OF                :
TRANSPORTATION, ELAINE L. CHAO, in her official  :
capacity as Secretary of Transportation, FEDERAL  :
HIGHWAY ADMINISTRATION, and BRANDYE        :
HENDRICKSON, in her official capacity as Deputy   :
Administrator of the Federal Highway Administration,  :
                                           :
                    Defendants.            :
------------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AS MOOT

JOON H. KIM
Acting United States Attorney for the
Southern District of New York,
*Attorney for Defendants*
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2721
Facsimile:   (212) 637-2686

TOMOKO ONOZAWA
Assistant United States Attorney
    – Of Counsel –

## TABLE OF CONTENTS

**ARGUMENT** ...................................................................................................**1**

    A.    Plaintiffs Concede They Have Obtained the Relief They Sought ...........................1

    B.    The Voluntary Cessation Exception Does Not Apply .............................................2

          1.    Courts Accord Deference to the Government's Representations that Challenged Conduct Has Been Discontinued ........................................2

          2.    There is No Evidence that the Government is Acting in Bad Faith............7

    C.    Plaintiffs' Speculative Concerns Do Not Overcome Mootness............................16

    D.    Plaintiffs' Request for an Abeyance Should be Denied........................................18

**CONCLUSION** ..............................................................................................**19**

# TABLE OF AUTHORITIES

**Cases**

*Ahrens v. Bowen,*
    646 F. Supp. 1041 (E.D.N.Y. 1986)................................................................... 9, 10, 12

*Ahrens v. Bowen,*
    852 F.2d 49 (2d Cir. 1988)............................................................................................. 12

*Alabama Hospital Association v. Beasley,*
    702 F.2d 955 (11th Cir. 1983)....................................................................................... 17

*Ali Qaid v. United States*, 15 Civ. 2271 (VSB),
    2016 WL 1127797 (S.D.N.Y. Feb. 19, 2016) ........................................................ 18

*America Cargo Transport, Inc. v. United States,*
    625 F.3d 1176 (9th Cir. 2010)......................................................................................... 2

*American Civil Liberties Union v. U.S. Conference of Catholic Bishops,*
    705 F.3d 44 (1st Cir. 2013) ............................................................................................. 2

*Ammex, Inc. v. Cox,*
    351 F.3d 697 (6th Cir. 2003)........................................................................................... 2

*Armster v. U.S. District Court for the Central District of California,*
    806 F.2d 1347 (9th Cir. 1986) ...................................................................................... 13

*Bell v. City of Boise,*
    709 F.3d 890 (9th Cir. 2013)......................................................................................... 14

*Beta Upsilon Chi Upsilon Chapter v. Machen,*
    586 F.3d 908 (11th Cir. 2009)......................................................................................... 2

*Brown v. Buhman,*
    822 F.3d 1151 (10th Cir. 2016)..................................................................................... 11

*Citizens for Responsibility and Ethics in Washington v. U.S. Securities and Exchange Commission,*
    858 F. Supp. 2d 51 (D.D.C. 2012) .......................................................................... 3, 12

*Dow Chemical Co. v. U.S. E.P.A.,*
    605 F.2d 673 (3d Cir. 1979).......................................................................................... 14

*Environmental Protection Information Center v. U.S. Forest Service,*
    No. C-02-2708, 2006 WL 2130905 (N.D. Cal. July 28, 2006)............................. 6, 7

*Eureka V LLC v. Town of Ridgefield,*
    596 F. Supp. 2d 258 (D. Conn. 2009) ............................................................... 15

*Flast v. Cohen,*
    392 U.S. 83 (1942) ............................................................................................... 2

*Fox v. Board of Trustees,*
    42 F.3d 135 (2d Cir. 1994) ................................................................................. 18

*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo,*
    981 F.2d 50 (2d Cir. 1992) ................................................................................. 14

*In re Kurtzman,*
    194 F.3d 54 (2d Cir. 1999) ................................................................................. 16

*Kappel v. Comfort,*
    914 F. Supp. 1056 (S.D.N.Y. 1996) ................................................................... 19

*Lamar Advertising of Penn, LLC v. Town of Orchard Park,*
    356 F.3d 365 (2d Cir. 2004) ............................................................................ 2, 8

*Legal Assistance for Vietnamese Asylum Seekers v. Department of State,*
    74 F.3d 1308 (D.C. Cir. 1996) ........................................................................... 13

*Martin-Trigona v. Shiff,*
    702 F.2d 380 (2d Cir. 1983) ................................................................................. 1

*Mhany Management, Inc. v. County of Nassau,*
    819 F.3d 581 (2d Cir. 2016) ........................................................................ 2, 8, 9

*Monroe v. Bombard,*
    422 F. Supp. 211 (S.D.N.Y. 1976) ..................................................................... 13

*Nader v. Volpe,*
    475 F.2d 916 (D.C. Cir. 1973) ........................................................................... 14

*Natural Resources Defense Council v. Abraham,*
    355 F.3d 179 (2d Cir. 2004) .............................................................................. 17

*Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,*
    683 F.2d 752 (3d Cir. 1982) .............................................................................. 18

*New York Public Interest Group v. Whitman,*
    321 F.3d 316 (2d Cir. 2003) ................................................................................. 5

*Northern Virginia Women's Medical Center v. Balch*,
    617 F.2d 1045 (4th Cir. 1980)................................................................ 5

*Ohio Department of Human Services v. U.S. Department of Health & Human Services*,
    862 F.2d 1228 (6th Cir. 1988).............................................................. 18

*R.C. Bigelow v. Unilever*,
    867 F.2d 102 (2d Cir. 1989)................................................................. 4

*Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*,
    850 F.3d 507 (2d Cir. 2017)................................................................ 18

*Ragsdale v. Turnock*,
    841 F.2d 1358 (7th Cir. 1988)...................................................... 3, 11, 12

*Readick v. Avis Budget Group, Inc.*,
    No. 12 Civ. 3988 (PGG), 2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014)................................ 18

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
    601 F.3d 1096 (10th Cir. 2010)................................................... 12, 14, 16

*Russman v. Board of Education*,
    260 F.3d 114 (2d Cir. 2001)................................................................ 10

*Schell v. OXY USA Inc.*,
    814 F.3d 1107 (10th Cir. 2016)........................................................... 17

*Shanks Village Committee Against Rent Increases v. Cary*,
    197 F.2d 212 (2d Cir. 1952)................................................................. 7

*Sierra Club v. Hanna Furnace Corp.*,
    636 F. Supp. 527 (W.D.N.Y. 1983) ..................................................... 15

*Sossamon v. Lone Star State of Texas*,
    560 F.3d 316 (5th Cir. 2009)........................................................ passim

*Tawwab v. Metz*,
    554 F.2d 22 (2d Cir. 1977).................................................................. 5

*Trudeau v. Bockstein*,
    No. 05 Civ. 1019, 2008 WL 541158 (N.D.N.Y. Feb. 25, 2008)................................ 6

*U.S. Steel Corp. v. Environmental Protection Agency*,
    595 F.2d 207 (5th Cir. 1979)............................................................. 18

*United States v. Blackburn*,
　461 F.3d 259 (2d Cir. 2006) ........................................................................ 18

*United States v. Chemical Foundation*,
　272 U.S. 1 (1926) ....................................................................................... 7, 8

*United States v. Dean*,
　604 F.3d 1275 (11th Cir. 2010) .................................................................. 18

**Other Authorities**

82 Fed. Reg. 45179 (Sept. 28, 2017) .............................................................. 1, 3

82 Fed. Reg. 46427 (Oct. 5, 2017) .............................................................. 1, 3, 15

13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.6 (3d ed. 2008) .................................................................................................... 4

13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.7 (3d ed. 2008) .................................................................................................. 11

Defendants, by and through their attorney Joon H. Kim, Acting United States Attorney for the Southern District of New York, respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  As explained below, Plaintiffs' opposition relies on unsupported speculation that the relief they have already obtained will be undone by defendant Federal Highway Administration ("FHWA") after dismissal, or by a hypothetical third party challenge to the September 28, 2017 effective date of the GHG measure.  Plaintiffs' hypothetical concerns are ungrounded in any factual basis and do not undermine the presumption of good faith accorded to the agency's actions and statements. This Court should therefore dismiss this action as moot.

## ARGUMENT

### A.    Plaintiffs Concede They Have Obtained the Relief They Sought

In their opposition brief, *see* Plaintiffs' Opposition to Defendants' Motion to Dismiss, dated October 27, 2017 ("Pls.' Opp.") [Dkt. No. 32], Plaintiffs do not contest that voluntary agency action has fully redressed their alleged injuries under the Administrative Procedure Act ("APA").  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). Because the GHG measure has been in effect since September 28, 2017, 82 Fed. Reg. 45179 (Sept. 28, 2017) ("September 28 Notice"), and Plaintiffs have been afforded the opportunity to comment on FHWA's proposal to repeal the GHG measure, 82 Fed. Reg. 46427 (Oct. 5, 2017) ("October 5 Notice"), there is no effective relief that this Court can grant Plaintiffs, and this case must be dismissed as moot.  Although Plaintiffs still urge the Court to permit summary judgment briefing on the appropriateness of the prior delay and suspension of the GHG measure under the APA, *see* Pls.' Opp. at 1, 13—any resulting order will be an advisory opinion that this Court

lacks authority to issue.  *Flast v. Cohen*, 392 U.S. 83, 95 (1942).  *See also American Civil Liberties Union v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (dismissal on mootness grounds "clearest in cases where the only relief requested is an injunction," and "issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory").

**B.      The Voluntary Cessation Exception Does Not Apply**

Plaintiffs cannot prevail on their assertion that the "voluntary cessation" exception to mootness applies.  The Government has established that the conduct challenged in this lawsuit—the postponement of the effective date of the GHG regulation without providing for notice and comment—could not reasonably be expected to recur.

1.      <u>Courts Accord Deference to the Government's Representations that Challenged Conduct Has Been Discontinued</u>

Plaintiffs concede, as they must, that as a government entity, "some deference must be accorded" to FHWA's "representations that certain conduct has been discontinued."  *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581, 604 (2d Cir. 2016) (quoting *Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 374 (2d Cir. 2004)).  *See also America Cargo Transport, Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) ("The government's change of policy presents a special circumstance in the world of mootness . . . unlike in the case of a private party, we presume the government is acting in good faith."); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (for purposes of establishing that voluntarily ceased conduct will not recur, government actors exercising their official duties are accorded presumption of good faith); *Beta Upsilon Chi Upsilon Chapter v. Machen*, 586 F.3d 908, 916 (11th Cir. 2009) (where defendant is government actor, there is a rebuttable presumption that challenged conduct will not recur); *Ammex, Inc. v. Cox*, 351 F.3d

697, 705 (6th Cir. 2003) ("[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties") (citations omitted); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) ("We note additionally that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties."); *Citizens for Responsibility and Ethics in Washington v. U.S. Securities and Exchange Commission*, 858 F. Supp. 2d 51, 61-62 (D.D.C. 2012) (acknowledging that "other Circuits have consistently recognized that where the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior") (citing cases).

Because the GHG measure has been in effect since September 28, 2017, 82 Fed. Reg. 45179, it is logically impossible for Defendants to issue further notices postponing or temporarily suspending that effective date.  Moreover, as FHWA initiated rulemaking procedures on October 5, 2017, that give the public an opportunity to submit comments and information to aid FHWA in making a final decision on whether to repeal, retain or revise the measure, there is no reasonable expectation that Defendants will repeal the measure without notice and comment.  82 Fed. Reg. 46427; *see also* Declaration of Brandye L. Hendrickson dated October 13, 2017 ("Hendrickson Decl.") [Dkt. No. 31], ¶¶ 6-8.  To the extent there is any lingering doubt over FHWA's future actions with respect to the GHG measure, its Acting Administrator has made clear that the agency intends to permit the GHG measure to remain in effect until the end of the notice and comment rulemaking process.  *Id.* ¶ 8.  In short, FHWA has taken regulatory actions and provided a sworn statement of intent—all of which are entitled to a presumption of good faith and should be accorded deference—which demonstrate that the prior agency actions challenged by Plaintiffs' APA claim will not, in fact, recur.

Plaintiffs assert that the Hendrickson Declaration contains only "conclusory expressions of intent [that] are of limited consequence," Pls.' Opp. at 11, and fails to support a finding of mootness because it should have "promise[d] that the agency will 'never, under any circumstances' resume its unlawful conduct . . . ." *Id.* at 12. Contrary to Plaintiffs' assertions, the Hendrickson Declaration could not be more clear: (1) FHWA issued the September 28 Notice which stated that the GHG measure was effective as of September 28, 2017, Hendrickson Decl. ¶ 4; (2) consistent with the September 28 Notice, FHWA issued the October 5 Notice and sought public comments on whether to repeal, retain or revise the GHG measure and requested other information that the agency believes will be beneficial and useful to its final decision, *id.* ¶¶ 6-8; (3) at the end of the comment period, FHWA will review and respond to the comments received in issuing the final rule, *id.* ¶ 8; and (4) FHWA intends to allow the GHG measure to stay in effect until the conclusion of the notice and comment process and does not intend to suspend or amend that measure during the interim period. *Id.*

None of the cases Plaintiffs cite support their proposition that an agency declaration must contain specific words or pronouncements to support a mootness determination. Indeed, several of the cited cases are particularly inapposite, as they involve purely private parties, who are not owed any presumption of good faith. *See, e.g.*, *R.C. Bigelow v. Unilever*, 867 F.2d 102 (2d Cir. 1989). Where governmental actors are involved, "[m]ost cases that deny mootness rely on *clear showings* of reluctant submission and a desire to return to the old ways." 13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.6 (3d ed. 2008) (emphasis added). Nothing in the Hendrickson Declaration evinces a "clear showing" of reluctance or any "desire to return to the old ways."

Absent contrary evidence, courts have accorded a presumption of good faith to

statements by government officials affirming the voluntary cessation of challenged governmental actions. *See, e.g., Sossamon*, 560 F.3d at 325 (applying "presumption of good faith" accorded to government employees to mootness challenge, and finding "sufficient" affidavit of state correctional institutions official that challenged policy had changed); *Northern Virginia Women's Medical Center v. Balch*, 617 F.2d 1045, 1049 (4th Cir. 1980) (dismissing as moot plaintiff's challenge to local prosecutor's policy of not enforcing state trespass statute against anti-abortion protestors who unlawfully entered abortion clinic premises, where prosecutor's counsel asserted at oral argument that non-enforcement policy was abandoned and Fourth Circuit did not question "the good faith of this representation"); *Tawwab v. Metz*, 554 F.2d 22, 23 (2d Cir. 1977) (dismissing as moot plaintiffs' challenge to prison policy because it was "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," where "official prison document" provided to the Second Circuit during oral argument showed that defendant had changed its policy).

The cases cited by Plaintiffs, Pls.' Opp. at 11-12, are not to the contrary. The Second Circuit's decision in *New York Public Interest Group v. Whitman*, 321 F.3d 316 (2d Cir. 2003), is inapposite. In that case, plaintiff sought judicial review of final EPA rulings in 2001 that fully approved a Clean Air Act permit program administered by the State of New York, despite EPA's awareness since 1996 that New York's program was deficient in certain aspects. *Id.* at 319. The Second Circuit held that the state agency's "letter of commitment," which identified changes the agency intended to make to bring it into compliance, did not render the case moot. *Id.* at 326. Yet in the instant case, the question is not whether the Government will in the future take steps to render the GHG regulation effective; it has already done so. The Hendrickson Declaration is not a "statement of intent," as Plaintiffs attempt to characterize it, Pls.' Opp. at 11, for the

Government has already acted.  Rather, the Hendrickson Declaration goes to the question of whether there is a reasonable likelihood that the Government will reverse course if this litigation were to be dismissed.

Plaintiffs also rely upon cases in which, looking at the totality of circumstances, there was countervailing evidence of bad faith on the part of the agency, or in which the agency did not clearly state its intent that its prior conduct would not recur.  *See Trudeau v. Bockstein*, No. 05 Civ. 1019, 2008 WL 541158, at \*\*4-5 (N.D.N.Y. Feb. 25, 2008) (case was not moot because of certain facts in record, and defendant agency's stated intent to not repeat challenged actions were conditioned on certain contingencies).  That is not the case here.

For example, in *Environmental Protection Information Center v. U.S. Forest Service*, No. C-02-2708, 2006 WL 2130905 (N.D. Cal. July 28, 2006) ("*EPIC*"), the district court ruled in 2003 that the Forest Service had violated the National Environmental Policy Act ("NEPA") when it issued a 2001 Fire Management Plan without first preparing an environmental evaluation or an environmental impact statement.  *Id.* at \*1.  In 2005, the Forest Service issued a new Fire Management Plan, again without completing an evaluation or impact statement, because it deemed that step "unnecessary," and represented that it would appeal from any order requiring the agency to complete those steps.  *Id.*  In 2006, the district court entered an order which held that the agency's 2005 plan, like the 2001 plan, required an evaluation or an impact statement. *Id.* at \*2.

After the district court's 2006 order, the Forest Service moved to dismiss on mootness grounds and submitted an affidavit which, among other things, stated that the agency had withdrawn the 2005 plan and had no intent of replacing it.  *Id.* at \*3.  In light of the record as a whole, the district court held that the voluntary cessation exception did not apply, noting that the

2005 plan withdrawal "occurred only after years of litigation in which the Forest Service has consistently maintained the correctness of its approach, and continues to do so." *Id.* at *10. The district court also found the agency affidavit lacking in "assurance" that the challenged conduct would not recur, since the agency had failed to comply with the district court's 2003 order when it issued the 2005 plan. *Id.* at *9. The district court also observed that the Forest Service had asked the court to dismiss the case as moot and issue a final judgment so the agency could file an appeal. *Id.* Nonetheless, the district court dismissed the action as moot because it could not fashion an appropriate remedy under the circumstances. *Id.* at *12.

In this case, FHWA's stated intent to not suspend or amend the GHG measure during the proposed rulemaking period, *see* Hendrickson Decl. ¶¶ 6-8, is wholly consistent with the FHWA's act of putting the measure into effect and immediately soliciting notice and comment on whether to repeal, retain or revise that measure. Based on the record as a whole and the complete relief afforded to Plaintiffs, no reasonable interpretation of the Hendrickson Declaration foreshadows future allegedly illegal action in any way.

2.      There is No Evidence that the Government is Acting in Bad Faith

Plaintiffs assert that there are circumstances indicating that, notwithstanding FHWA's representations to the contrary, it will in the future resume the challenged conduct and suspend the effective date of the GHG measure without notice and comment. Pls.' Opp. at 8. There is no evidence of bad faith sufficient to overcome the presumption of regularity accorded to governmental actors, however. *Cf. Shanks Village Committee Against Rent Increases v. Cary*, 197 F.2d 212, 217 (2d Cir. 1952) (quoting *United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). The cases on which Plaintiffs rely are completely inapposite and factually

distinguishable from this one.

   a.  The Timing of the September 28 Notice is Not Dispositive

  First, Plaintiffs assert that the fact that the September 28 Notice was issued after the commencement of litigation compels a finding that this action is not moot. *Id.* at 5. Yet the discontinuation of the challenged action after the commencement of litigation is the very definition of voluntary cessation. If such timing alone were dispositive, that would end any inquiry into whether a defendant's voluntary cessation of challenged conduct was sufficient to establish mootness. Courts have been clear, however, that the applicable test remains whether there is evidence of bad faith sufficient to overcome the presumption that the Government is not engaged in a sham to evade judicial review, thereby allowing it to resume challenged conduct after a lawsuit has been dismissed. *Sossamon*, 560 F.3d at 325; *Lamar Advertising*, 356 F.3d at 376-77 ("[W]e are hesitant to hold that a significant amendment or repeal of a challenged provision that obviates the plaintiff's claims does not moot a litigation, absent evidence that the defendant intends to reinstate the challenged statute after the litigation is dismissed . . . ."). There is no such evidence of bad faith here.

  The two cases cited by Plaintiffs do not support the proposition that the Government must demonstrate that "the decision to lift the suspension pre-dated Plaintiffs' suit" to establish mootness. Pls.' Opp. at 5. Rather, both cases involved a confluence of suspicious factors that led the courts to conclude that there was a reasonable likelihood that the defendants could resume the challenged conduct. In the first case, *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016), a nonprofit housing developer and a non-profit organization supporting low-income communities brought a Fair Housing Act ("FHA") suit alleging discriminatory re-zoning of parcels of county-owned land to prevent the construction of low- and

middle-income housing on those parcels.  *Id.* at 588-98.  After five years of litigation, the County

defendant argued in its summary judgment papers that the case had been rendered moot because

the County was now planning to use the disputed parcels to build a new courthouse rather than

housing, such that plaintiffs' injury (*i.e.,* the inability to construct affordable housing) was no

longer caused by allegedly discriminatory zoning.  *Id.* at 599, 603.

The Second Circuit held the case was not moot because "suspicious timing and

circumstances pervade the County's decision to build a courthouse," such that the Court was

"unpersuaded that the [defendant] has committed to this course permanently."  *Id.* at 604.

Among other things, the County had announced its decision to build the courthouse after years of

litigating, right before summary judgment motions were due.  *Id.*  The County then let the project

stay "dormant for years" after the County's summary judgment motion was granted "and the

threat of liability against the County was diminished."  *Id.*  After plaintiffs filed their notices of

appeal and "the threat of liability against [the county] again reemerged," construction fences

suddenly appeared around the site.  *Id.*  The Second Circuit also found unpersuasive the

County's assertion that the courthouse project was "in response to an emergency need for a new

courthouse," because the County was aware of the need for a new courthouse since 2004.  *Id.* at

605.  In light of all these facts, the Second Circuit held it was not clear that the County would not

resume the challenged conduct, which was to use the property to build upper-income housing,

and declined to dismiss the appeal as moot.  *Id.*

*Ahrens v. Bowen*, 646 F. Supp. 1041 (E.D.N.Y. 1986), *rev'd on other grounds*, 852 F.2d

49 (2d Cir. 1988), is also distinguishable.  As an initial matter, *Ahrens* applied the "capable of

repetition, yet evading review" exception to mootness[1]—which Plaintiffs are not asserting here. *Id.* at 1048.  Thus, the court was not called upon to decide whether there was evidence of bad faith sufficient to overcome the deference afforded governmental actors under the voluntary cessation doctrine.  *Ahrens* involved a challenge to the Social Security Administration's policy of counting punitive damages awards as income that reduced plaintiffs' entitlement to Supplemental Security Income program ("SSI") benefits.  *Id.* at 1044.  Pursuant to that policy, SSA had determined that plaintiffs were overpaid SSI benefits, and asserted a right to recoup a portion of those benefits.  *Id.*  During the course of the litigation, the Government waived recoupment of the overpayments, and argued that this waiver rendered plaintiffs' claims moot. *Id.* at 1046-47.  The court noted that, however, that the issue was likely to recur because the challenged policy was still in effect.  *Id.* at 1048.  Moreover, the court found it probable that the Government intended to evade judicial review of its policy in future suits, given that it "had repeatedly refused to waive recoupment in the present case over a five year period [and then] suddenly elected to so on the eve of plaintiffs' motion for summary judgment."  *Id.*

Accordingly, it is not true, as Plaintiffs contend, Pls.' Opp. at 5-6, that it was the timing of the defendants' change in policy that led the courts to conclude that challenged conduct was likely to recur; rather, it was an extended pattern and history of taking positions contrary to plaintiffs' interests, along with other facts and circumstances in the record.  And even to the extent that timing was relevant to those courts' considerations, it was only because the Government's sudden change in policy came after many years of maintaining a contrary

---

[1] The capable-of-repetition exception requires the following two circumstances to be met: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Russman v. Board of Education*, 260 F.3d 114, 119 (2d Cir. 2001) (citation omitted).

position.  Although Plaintiffs argue that this case is analogous because the "purportedly mooting

conduct occurred 'on the eve of summary judgment,'" *id.* at 5 (quoting *Mhany Management*),

there is no such prolonged history here that would call into question the genuineness of the

Government's motives.  The instant suit was only filed on July 31, 2017.  The September 29

Notice came less than two months later.  That the Government acted so quickly is a sign of good

faith, not bad faith.  *See, e.g.*, *Brown v. Buhman*, 822 F.3d 1151, 1167 (10th Cir. 2016); 13C

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, §

3533.7 (3d ed. 2008) ("[S]elf-correction [by government officials] again provides a secure

foundation for mootness so long as it seems genuine.").

Given the presumption of good faith accorded to government actors exercising their

official duties, without evidence to the contrary, courts have "assume[d] that formally announced

changes to official governmental policy are not mere litigation posturing."  *Sossamon*, 560 F.3d

at 325; *accord Ragsdale*, 841 F.2d at 1365.  Beyond mere speculation, Plaintiffs have not offered

any contrary evidence to show that the September 28 Notice, the October 5 Notice, and the

Hendrickson Declaration collectively evince FHWA's intent to permit the GHG measure to

remain in effect and to consider any repeal, retention or modification of the GHG measure after

the public has an opportunity to submit comments.

        b.      The September 28 Notice Did Not Need to Disavow Defendants'
                  Allegedly Unlawful Conduct to Establish the Government Is
                  Acting in Good Faith

Plaintiffs argue that the September 28 Notice's "failure to acknowledge or disavow the

unlawfulness of the three suspensions" also suggests that the challenged conduct is not moot.

Pls.' Opp. at 6.  There is no requirement, however, that the Government must expressly concede

"illegality" or to "disavow" prior actions in order to demonstrate that its prior conduct could not

reasonably be expected to recur.  *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601

F.3d 1096, 1118 n.17 (10th Cir. 2010) (whether governmental agency acknowledges the

impropriety of its former, challenged course of conduct is "not dispositive"); *Citizens for

Responsibility and Ethics in Washington*, 858 F. Supp. 2d at 62 ("Changed policy need not come

in the form of a formal revocation of the previous policy, as long as the assurance of

discontinuation is sufficient to establish that there is no reasonable expectation that the

unauthorized actions will resume.") (citing *Ragsdale*, 841 F.2d at 1365-66).  By their plain

terms, the September 28 Notice and the October 5 Notice were issued to put the GHG measure

into effect and to provide the public with an opportunity to comment on whether it should remain

in place.  None of the cases cited by Plaintiffs support their proposition that both Federal

Register notices should have taken the additional, extraordinary and unnecessary step of

disavowing purportedly illegal conduct to overcome mootness.  *Id.* at 6-7.

  In *Ahrens v. Bowen*, 852 F.2d 49, 52 (2d Cir. 1988), the Second Circuit affirmed the

district court's holding that the Government had not mooted the case by voluntarily waiving

recoupment of plaintiffs' SSI benefit overpayments.  *See supra* at 9-10 (discussing *Ahrens*, 646

F. Supp. at 1048).  Yet in ruling that there was a reasonable possibility that the challenged

conduct could recur, the Second Circuit relied upon the fact that the challenged policy was still

in effect, and the Government continued to defend the validity of that policy.  *Id.* at 53.  Nothing

in *Ahrens* stands for the proposition that the Government must formally disavow a prior policy or

practice that has since been discontinued before it can be determined that it is acting in good

faith when it represents that it does not intend to reinstate the prior policy or practice.

  Similar to *Ahrens*, the remaining cases cited by Plaintiffs do not support their view that

the September 28 Notice had to admit to and disavow allegedly wrongful conduct for this Court

to find that FHWA is acting in good faith.  *See, e.g., Legal Assistance for Vietnamese Asylum Seekers v. Department of State*, 74 F.3d 1308, 1311 (D.C. Cir. 1996), *vacated sub nom.*, 519 U.S. 1 (1996) (per curiam) (holding, in vacated opinion, that Vietnamese plaintiffs' challenge to State Department's procedures for handling immigrant visa applications was not moot when agency granted plaintiffs the relief sought, because record showed that agency resumed its former procedures and it was "virtually certain" that plaintiffs may refile new visa applications and undergo challenged procedures again); *Armster v. U.S. District Court for the Central District of California*, 806 F.2d 1347, 1359 (9th Cir. 1986) (holding that Administrative Office of the United States Courts' five-month suspension of civil jury trials due to lack of Congressional funding was not mooted when suspension was lifted, because the possibility of future budget constraints and future suspensions of court activities were "more than likely to recur"); *Monroe v. Bombard*, 422 F. Supp. 211, 215 n.5 (S.D.N.Y. 1976) (Sunni Muslims' challenge to correctional facility's policy of prohibiting beards was not moot when facility modified policy to except Sunni Muslims, where facility previously refused to amend policy despite repeated requests and conferences with prison officials, and facility did not admit illegality of challenged activity nor demonstrate it would not be repeated).

   c. The September 28 Notice Did Not Need to Bar Defendants
     From Resuming Prior Action

  Plaintiffs further argue that the fact that the language of the September 28 Notice does not preclude the Government from suspending the GHG regulation in the future which, in turn, indicates that the challenged conduct could recur.  Pls.' Opp. at 7.  In making this argument, Plaintiffs ignore that the Government has represented to the Court that FHWA "has no intention of suspending or amending the GHG measure" during the pendency of the notice and comment period.  Hendrickson Decl. ¶ 8.  Under Second Circuit precedent, this representation is due

deference.  Although Plaintiffs suggest that this deference is owed only with respect to legislative enactments, the Second Circuit has made clear that such deference is owed even where the action taken is regulatory in nature.  *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) (holding that state's adoption of emergency regulations in response to lawsuit suspending the challenged program were sufficient to establish mootness).

None of the cases cited by Plaintiffs support the proposition that the September 28 Notice must definitively prevent the agency from suspending the GHG regulation in the future before this action can be considered moot.  To the contrary, it is well-established that for purposes of the voluntary cessation exception, the government actor need not show "some physical or logical impossibility that the challenged policy will be reenacted," unless there is "evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct."  *Sossamon*, 560 F.3d at 325; *accord Rio Grande Silvery Minnow*, 601 F.3d at 1117-18.

Notably, all of the cases cited by the Plaintiffs are factually distinguishable.  *See, e.g. Bell v. City of Boise*, 709 F.3d 890, 900-01 (9th Cir. 2013) (homeless plaintiffs' challenge to municipal ordinances prohibiting sleeping in public places was not moot when chief of police issued "special order" allowing homeless to sleep outside at night when shelter spaces are full, because challenged ordinances were still in place, special order was an internal policy document created solely by the chief of police, and special order failed to fully address plaintiffs' allegations); *Dow Chemical Co. v. U.S. E.P.A.*, 605 F.2d 673, 679 (3d Cir. 1979) (Dow's APA challenge to EPA's expansion of rule without notice and comment was not moot when EPA withdrew challenged rule; EPA had "not altered its substantive stance" in the case and had "merely withdrawn the regulation with the declaration that it will be resubmitted"); *Nader v. Volpe*, 475 F.2d 916, 917 (D.C. Cir. 1973) (challenge to Department of Transportation's grant of

14

temporary exemption to auto manufacturer from effective date of promulgated motor vehicle safety standard was not moot when agency withdrew temporary exemption, because under "capable of repetition, yet evading review" exception, agency was likely to grant temporary exemptions to same corporation and other manufacturers in the future); *Eureka V LLC v. Town of Ridgefield*, 596 F. Supp. 2d 258, 265 (D. Conn. 2009) (developer's Fair Housing Act claim against town defendants for enacting new zoning regulations that precluded affordable housing on property development was not moot when defendants claimed that developer's applications would be reviewed under old regulations; plaintiff was likely to file successive applications that would be subject to new regulations); *Sierra Club v. Hanna Furnace Corp.*, 636 F. Supp. 527, 529 (W.D.N.Y. 1983) (citizen suit case against private defendant under environmental statute was not mooted by defendant's representations that plant was inoperable and that defendant did not intend to restart operations, where defendant's affidavits showed, at most, that restarting operations required a significant investment in new equipment, but failed to provide convincing evidence that operations would never recommence).

Simply put, none of the authorities Plaintiffs cite required the September 28 Notice to include a binding commitment to not suspend the GHG measure without further notice and comment. The September 28 Notice clearly stated that the FHWA "has initiated additional rulemaking procedures proposing to repeal the GHG measure . . . and anticipates publishing a [Notice of Proposed Rulemaking] in 2017 with a goal of issuing a Final Rule in Spring 2018." 82 Fed. Reg. at 45180. Consistent with that statement, FHWA commenced that notice and comment procedure a week later, on October 5, 2017. 82 Fed. Reg. 46427. Unlike the cases cited above, nothing in this record suggests that the GHG measure will be suspended or amended without notice and comment and that Plaintiffs will be faced with the same case or controversy

that previously gave rise to their APA claims.

## C.   Plaintiffs' Speculative Concerns Do Not Overcome Mootness

In their opposition to Defendants' motion, Plaintiffs have concocted a series of "mere possibilities" that are "too speculative to avoid mootness." *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999).  Plaintiffs theorize that "the proposed agency action announced in the October 5 Notice . . . *may*, as a practical matter, tempt the agency to violate the law again."  Pls.' Opp. at 8-9 (emphasis added).  Plaintiffs also surmise that "*if* states were to complain that they should not be required to comply with the measure . . . the FHWA *could* be tempted to suspend the measure yet again."  *Id.* (emphasis added).  Plaintiffs further speculate that FHWA's purported "drive to repeal the measure *may* soon provide an incentive for it to issue a separate, interim notice suspending the measure's current effect."  *Id.*  (emphasis added).

Plaintiffs' assertions that FHWA could or may be "tempted" to suspend the GHG measure before the end of its rulemaking process are unfounded.  FHWA's regulatory actions and the statements of its Acting Administrator collectively demonstrate there is no likelihood that FHWA will suspend the GHG measure without notice and comment, especially now that the agency has formally invited public comments on whether to keep the measure.  Hendrickson Decl. ¶¶ 6-8.  Instead, Plaintiffs' purported unease with the FHWA's motives and intent falls within the realm of "concerns" that courts have deemed too speculative or remote to defeat a finding of mootness.  *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint as Moot, dated October 13, 2017, at 8-9 [Dkt. No. 30].[2]  *See also Rio Grande Silvery*

---

[2] Plaintiffs' citations to an online Bloomberg report and an unpublished law journal article, *see* Declaration of Cecelia D. Segal, dated October 27, 2017 [Dkt. No. 32-1], Exs. A & B, have no bearing on the mootness analysis.  Neither article mentions FHWA and the current GHG measure nor contains any official statements or representations from FHWA which demonstrate that the agency is likely to repeat the actions challenged in this suit.

*Minnow*, 601 F.3d at 1117 ("[T]he 'mere possibility' that an agency might rescind amendments to its actions or regulations does not enliven a moot controversy") (citing *Alabama Hospital Association v. Beasley*, 702 F.2d 955, 961 (11th Cir. 1983)).

Plaintiffs also insist that "a third-party legal challenge . . . [is] more likely," and posit that "[s]uch a challenge, *if* successful, *might* revive the indefinite suspension of the greenhouse gas measure . . . ." *Id.* at 9, n.1 (emphasis added). FHWA is unaware of any third-party challenge to the October 5 Notice, Hendrickson Decl. ¶ 5, and Plaintiffs' opposition does not state that any third party challenge has been filed. As the Tenth Circuit has recognized, "[c]oncerns over the preclusive effect of an adverse judgment or other matters relating to a hypothetical unfiled suit are not cognizable reasons for continuing litigation that is otherwise moot." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1115 (10th Cir. 2016) (citing cases). In addition, if a third party were to challenge the September 28 Notice after this case is dismissed, Plaintiffs would suffer no prejudice because they would have a right to intervene and be heard on that matter.

Finally, Plaintiffs argue that the October 5 Notice does not "rectif[y] the FHWA's failure to provide notice and comment each time it suspended the greenhouse gas measure." Pls.' Opp. at 10. Yet they attack a straw man. The relevant question is whether there remains a live case or controversy.

Plaintiffs' reliance on *Natural Resources Defense Council v. Abraham*, 355 F.3d 179, 206 n.14 (2d Cir. 2004) and the remaining cases in its brief, Pls.' Opp. at 10, are misplaced because they bear on the merits of their APA claim, not the likelihood that the challenged conduct will recur under the voluntary cessation exception to mootness, and/or address an entirely different factual scenario where an agency accepted post-promulgation comments on a final rule promulgated without notice and comment. *See Abraham*, 355 F.3d at 206 n.14 (agency action

did not remedy underlying APA violation).  *See also United States v. Dean*, 604 F.3d 1275, 1280

(11th Cir. 2010) (addressing merits of APA claim in light of agency's receipt of after-the-fact

comments on rule promulgated without notice and comment); *Ohio Department of Human*

*Services v. U.S. Department of Health & Human Services*, 862 F.2d 1228, 1236 (6th Cir. 1988)

(same); *Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* 683

F.2d 752, 768 (3d Cir. 1982) (same); *U.S. Steel Corp. v. Environmental Protection Agency*, 595

F.2d 207, 214-15 (5th Cir. 1979) (same).

**D.      Plaintiffs' Request for an Abeyance Should be Denied**

As an alternative to dismissal, Plaintiffs ask this Court to "hold this case in abeyance until

the FHWA completes its rulemaking on the proposed repeal of the greenhouse gas measure."

Pls.' Opp. at 13.  That request is contrary to well-settled law holding that "[o]nce a case becomes

moot, a federal court no longer has subject-matter jurisdiction over the action, and the court

'must dismiss the case.'"  *Ali Qaid v. United States*, 15 Civ. 2271 (VSB), 2016 WL 1127797, at

*1 (S.D.N.Y. Feb. 19, 2016) (citing *Fox v. Board of Trustees*, 42 F.3d 135, 140 (2d Cir. 1994);

*United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006)).  *See also Radha Geismann, M.D.,*

*P.C. v. ZocDoc, Inc.*, 850 F.3d 507, 511 (2d Cir. 2017) ("Where there is no unresolved case or

controversy, 'mootness occurs' and 'the court—whether trial, appellate, or Supreme—loses

jurisdiction over the suit, which therefore must be dismissed.'") (citation omitted).

Plaintiffs have not cited any authority for their proposition that a court should keep a

moot action open in the event a new case or controversy arises in the future.  In addition,

Plaintiffs' reliance on the four stay factors enumerated in *Readick v. Avis Budget Group, Inc.*,

No. 12 Civ. 3988 (PGG), 2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014) is misplaced, because

those factors apply to requests to stay an action pending resolution of related litigation, not to

stay cases already deemed moot.  *See, e.g., id.* at *2 (applying four stay factors to defendants'

motion to stay action pending resolution of related litigation in another jurisdiction); *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (same).

The D.C. Circuit's eight-line, unpublished *per curiam* order in *American Lung Association v. Environmental Protection Agency*, No. 17-1172 (D.C. Cir. Oct. 6, 2017), offers no explanation for its decision to hold that appeal in abeyance and thus presents no applicable law or analysis for this Court to apply.  Even if that order were somehow relevant here, it is facially distinguishable from the relief Plaintiffs seek, because the abeyance period in that order runs for 30 days.  *Id.*  Here, Plaintiffs ask this Court to hold a moot case open for an unspecified period of time until FHWA completes a rulemaking process which, by Plaintiffs' estimation "will take significant time" because the agency "no doubt" will receive "voluminous comments opposing the rescission" that it will have to consider and respond to.  Pls.' Opp. at 9.

As noted previously, there is no prejudice to Plaintiffs if this case is dismissed as moot. If FHWA were to suspend the GHG measure without notice and comment, which Defendants have shown is not likely to occur, or if a third party challenges the September 28 Notice, which has not occurred either, nothing prevents Plaintiffs from filing a new APA action or intervening in any third party litigation to assert their interests in retaining the GHG measure.  Accordingly, Plaintiffs' alternative request for an abeyance should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' complaint should be dismissed as against the Defendants in its entirety.

Dated:  New York, New York
        November 3, 2017

JOON H. KIM
Acting United States Attorney for the
Southern District of New York,
*Attorney for Defendants*

By:  _____ */s/ Tomoko Onozawa* _____

TOMOKO ONOZAWA
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2721
Facsimile:  (212) 637-2686
E-mail:  tomoko.onozawa@usdoj.gov